FILED
10/5/22 1:16 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ROBYN E. PENNINGTON, | : | Case No. 21-10464-TPA |
| *Debtor.* | : | Chapter 13 |
| | : | |
| HOLLIS HOMER KEECH, AND | : | Adversary No.: 21-01016-TPA |
| CYNTHIA JO KOPPER | : | |
| *Plaintiff(s).* | : | |
| | : | |
| v. | : | |
| | : | |
| ROBYN E. PENNINGTON, | : | |
| *Defendant.* | : | Related to Doc. No. 19 |

## MEMORANDUM OPINION

*Appearances*:  Hollis Keech, Cynthia Kopper, pro se, for the Plaintiffs
Christopher Antalics, Esq., for the Defendant

### INTRODUCTION

This Court's dealings with the Debtor/Defendant, Robyn E. Pennington span several years before the filing of this adversary.[1] Between April 2013 and December 2015, the Debtor — formerly known as Robyn Lundgren — filed four Chapter 13 bankruptcies. The current matter under consideration is the ***Amended Motion for Adversary*** (Doc. No. 19) (hereinafter, "Complaint"), which stems from the Defendant's most recent filing.[2]

---

[1]  The Court has jurisdiction over this matter pursuant to *28 U.S.C. Section 1334*. This is a core matter under *28 U.S.C. Section 157(A)(2)(I)* and/or *(G)*.

[2]  The Defendant's current bankruptcy case is 21-10464-TPA. The four prior cases are 13-10442-TPA, 14-10120-TPA, 14-11306-TPA, and 15-11326. In each of these prior cases, the Defendant failed to make a single plan payment. Each case was dismissed without prejudice.

1

## *FACTS*

The Defendant filed her current Chapter 13 bankruptcy on August 21, 2021, in an apparent attempt to cure the outstanding balance on her residence and stay a pending ejectment action in McKean County, Pennsylvania. Because this is the Defendant's fifth bankruptcy, pursuant to its long-standing policy, the Court immediately issued an *Order to Show Cause* (Doc. No. 9) for the Defendant to personally appear and explain to the Court why this case should be allowed to proceed. At the October 7, 2021, hearing on the *Order to Show Cause*, the Defendant articulated her "good-faith" intentions to complete a successful Chapter 13 plan. The Court accepted those representations as true and vacated the *Order to Show Cause* — after admonishing the Defendant and making clear that any future failure to strictly abide by her Chapter 13 duties and responsibilities would result in dismissal of her case with a two-year bar to refiling.

Parallel to the Defendant's personal bankruptcy, this Adversary Proceeding arises from the debt relating to the installment land contract ("Land Contract") entered between the Defendant and the Plaintiffs, Hollis H. Keech and Cynthia Jo Kopper. The Plaintiffs are the current legal title owners of the subject real property located at 67 East Main St., Mount Jewett, Pennsylvania, 16740 ("Property"). The installment land contract was initially between the Defendant and the previous owners in fee simple, with the legal title later transferred to the Plaintiffs subject to the Land Contract. In the *Complaint*, as best the Court can determine, the Plaintiffs allege they are entitled to immediate possession of the Property with no right to cure due to all of the Defendant's prior defaults (hereinafter for convenience, "Count I") and relief from stay for similar reasons (hereinafter for convenience, "Count II").[3]

---

[3]     *See Complaint* ¶ 37, alleging the Land Contract terminated pre-petition due to the Defendant's numerous defaults. *See Complaint* ¶ 38 and 41 alleging a right to relief from Stay.

This dispute between the Plaintiffs and the Defendant is long and contentious, but the relevant facts include dealings with the prior Property owners — James and Jennifer McDonald (collectively, the "McDonalds"). In July 2017, the Defendant and Wade Pennington[4] (collectively, the "Penningtons"), entered the Land Contract with the McDonalds to purchase the Property. The purchase price was $13,900.00 with $3,000.00 payable upon execution, with the balance to be paid at $500.00 per month until paid in full.

On July 26, 2018, the Penningtons and the McDonalds signed an addendum to the Land Contract, which provided the Penningtons the option to purchase the Property outright for $2,900.00 — payable in three separate installments ("Addendum"). The Penningtons never made these installment payments. The Penningtons also failed to make successive monthly payments toward the Land Contract. Accordingly, the McDonalds posted five separate eviction notices on the Property noting past-due rent. The eviction notices were posted on: (1) July 5, 2018, for past-due rent and late charges; (2) July 26, 2018, for past-due rent and late charges; (3) September 4, 2018, for failure to make payments on the Addendum; (4) September 9, 2018, for failure to make payments on the Addendum; and (5) for past-due balances and to notify the Penningtons that an action for eviction would be initiated if they remained in the Property beyond October 5, 2019.[5]

On September 11, 2019, the McDonalds transferred their interest in the Land Contract to the Plaintiffs. The Plaintiffs were aware the Property was subject to the Land Contract

---

[4] The Record is unclear as to why Wade Pennington is no longer involved in this matter. It is sufficient to simply note that Wade Pennington did not join in this bankruptcy filing.

[5] The Eviction Notices issued on 9/4/2018, 9/9/2018, and 9/11/2018 warn the Pennington's that "[i]f [they] are still residing in the property on October 5, 2019 the landlord will file to pursue ev[]iction with the Magisterial District Justice court." It is uncertain whether the date listed was a typo. To the extent relevant, the Court assumes it was a typo and the action date was meant to be October 5, 2018.

but were unaware of the Addendum. Following the transfer, the Plaintiffs notified the Penningtons of the purchase and ordered them to vacate the Property. The Penningtons refused and remained at the Property, despite not making payments. Like with the McDonalds, the Plaintiffs allege the Penningtons never made a payment to them under the Land Contract after they purchased the Property from the McDonalds.

On October 11, 2019, the Plaintiffs filed a Complaint in Ejectment against the Penningtons in the Court of Common Pleas of McKean County, PA at Docket No. 10845-2019. The court found that, although the Penningtons defaulted on the Land Contract "by failing to adhere to the requirements in the contract and second addendum," the Plaintiffs did not give proper notice for an eviction. The Complaint in Ejectment was therefore dismissed in July 2020.

On September 16, 2020, the Plaintiffs properly notified the Defendant of her default on the Land Contract via certified mail. The Notice of Default stated the Defendant was delinquent in payment of the real property taxes and that, per the Addendum, $1,900.00 was owed to the Plaintiffs. The Notice of Default also stated that the outstanding amount had to be paid within fourteen (14) days receipt of notice. Further, the Land Contract would terminate forty-four (44) days from the receipt of the notice.

The Defendant did not cure her default and she failed to make the required Land Contract payments. The Plaintiffs requested that the Defendant vacate the Property, but again she refused. Therefore, on January 6, 2021, the Plaintiffs filed an Amended Complaint for Ejectment in McKean County at Docket No. 845-CD-2019. The Defendant then filed her current bankruptcy, staying the ejectment action.

The Defendant included the Plaintiffs among her list of creditors when she filed her current bankruptcy. On October 1, 2021, the Plaintiffs sent the Court a letter requesting they be removed from the list of creditors. The Plaintiffs stated that they were mistakenly included and requested the Court to "void [their] names from the bankruptcy so that [they] may continue with the litigation that is already ongoing in another court…." While not filed in the proper format, the Court decided to treat the letter as a *Motion for Relief from Stay*. After sending the letter and the Court setting a hearing date of October 7, 2021, the Plaintiffs retained bankruptcy counsel.

In her *Response* (Doc. No. 32) to the Plaintiffs' *Motion for Relief from Stay*, the Defendant stated that it was not a mistake the Plaintiffs were included in her filing. The Defendant emphasized that she filed the bankruptcy with the intent to pay off the remaining debt under the Land Contract and to retain the Property.

After the October 7th hearing, the Court informed the Plaintiffs they were properly listed as creditors in the Defendant's bankruptcy and allowed her case to proceed. On October 27, 2021, the Plaintiffs filed an *Objection to Confirmation of Chapter 13 Plan*, and *Supplement to Motion for Relief from Automatic Stay*. In their *Objection*, the Plaintiffs emphasized that the Defendant's failure to pay the balance due on the Land Contract following her default terminated her interest in the Property. The Plaintiffs claim, because the Defendant defaulted, the Land Contract was void and the Defendant therefore had no right to cure in a Chapter 13 plan.

A subsequent hearing was held on November 3, 2021, on the Defendant's contested *Plan* and the Plaintiffs' *Objection*. At the hearing, the Court explained to the Plaintiffs that the *Objection* would be treated as an adversary and directed the Plaintiffs to file the subject *Complaint*. At some later point, the Plaintiffs determined they could no longer afford the services of an

5

attorney and decided to continue without the assistance of counsel. Accordingly, Counsel for the Plaintiffs withdrew his appearance. The Plaintiffs have since represented themselves in both this Adversary and the Defendant's individual bankruptcy case.

Thereafter, the Plaintiffs, acting *pro se*, commenced this Adversary Proceeding on December 7, 2021. The Pretrial process was highly contentious, with the Plaintiffs filing several motions containing dozens of photographs claiming the Defendant had abandoned the Property and that their interest in the Property was at risk. Although the photographs were somewhat helpful in evaluating the Property's condition during the time the Defendant claims she lived there, the Plaintiffs failed in their burden and the preliminary motions were denied.

A trial in the Adversary Proceeding took place on September 9, 2022, in the Erie Bankruptcy Courtroom. The Court was disappointed that the Defendant failed to appear — despite having sufficient notice as to the date, time, and location of the trial. The Defendant was thus unable to present direct testimony about her presence at the Property or rebut the Plaintiffs' claims of abandonment and non-residency, which had become the primary focus of the Plaintiffs' case. Along with the legal issues present in this Adversary Proceeding, the Court scheduled for the same time matters involving objections to the Defendant's Chapter 13 bankruptcy plan and the Plaintiffs' *Proof of Claim* which had previously been consolidated with the trial.[6]

---

[6] As noted, concomitantly with this Adversary and the pending *Objection to Confirmation*, the Plaintiffs filed a *Proof of Claim* in the main bankruptcy for an unsecured claim in the amount of $15,307.87. In their claim, the Plaintiffs included past due property taxes, attorney's fees, private investigator expenses, supplies for court, the fee paid to the McDonalds when purchasing the land sale contract, and other expenses. The Defendant subsequently filed an *Objection* to the *Proof of Claim*, requesting it be disallowed.

## *DISCUSSION*

From the very beginning of this matter, when the Plaintiffs first sent their letter to the Court, the major thrust of this case has been their desire to obtain relief from stay to allow them to proceed with their pending ejectment action in state court. There is no dispute the Defendant violated numerous provisions of the Land Contract. Still, the Court must evaluate whether the Plaintiffs are entitled to their requested relief. As previously noted, in their *Complaint*, the Plaintiffs essentially include two Counts for relief: Count I that, due to her prior defaults, the Defendant does not retain an interest in the Property; and Count II, that the Plaintiffs are entitled to relief from the automatic stay for similar reasons, and mainly, for nonpayment of their claim.

### *The Defendant retains an interest in the Property.*

Key to whether the Defendant has a right to cure the Land Contract through a Chapter 13 bankruptcy is whether she is using the Property as her principal residence. Under *11 U.S.C. Section 1322(c)*, "a default with respect to . . . a lien on the debtor's *principal residence* may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law…." [emphasis added]. The Defendant has a right to cure her default on the Land Contract so long as the Property has not been sold at foreclosure sale and it is her principal residence. As explained below, the Defendant retained her interest in the Property.

In Pennsylvania, installment land contracts are secured by a lien upon real property. *Anderson Contracting Co. v. Daugherty*, 417 A.2d 1227, 1232 (Pa.Super.Ct. 1979), *appeal dismissed*, 425 A.2d 329 (Pa. 1980). When the McDonalds entered the Land Contract with the

Penningtons, a lien attached. Under the Bankruptcy Code, a lien is a "charge against or interest in the property to secure payment of a debt or performance of an obligation." *11 U.S.C. Section 101(37)*. That lien was maintained when the McDonalds transferred their interest in the Property to the Plaintiffs.

When the Defendant breached the Land Contract and Addendum, she defaulted on that lien. *See 11 U.S.C. Section 1322(c)(1)*. Nevertheless, the Third Circuit has determined that "§1332(c)(1) can be used to cure installment-contract breaches…." *In re Peralta*, 48 F.4th 178 (3rd Cir. 2022). Still, additional analysis is required in this case to determine whether the Defendant can cure under *Section 1322*. Namely, whether *Section 1322* applies since a "foreclosure sale" never happens in a land contract situation, and whether the Property was the Defendant's principal residence when she filed her current bankruptcy.

The Third Circuit's recent opinion, *Peralta*, provides guidance on the foreclosure sale issue.[7] In Pennsylvania, installment land contracts are treated like mortgages. *See Anderson*, 417 A.2d 1227. So, if a homeowner defaults, he or she can cure that default through bankruptcy. Chapter 13 allows a debtor homeowner to cure a mortgage default during the bankruptcy process until the home "is sold at foreclosure sale." *11 U.S.C. Section 1322(c)(1)*. Because the Land Contract is treated like a mortgage, the Defendant still possesses a right to cure under the statute.

*Peralta* also addresses a major issue involved with curing a land contract through *Section 1322(c)* — a breached installment land contract never undergoes the requisite foreclosure

---

[7] The Defendant's argument against the Plaintiffs' claims hinges on the applicability of *In re Grove*, 208 B.R. 845 (Bankr.W.D.Pa. 1997). That said, those arguments are not addressed below as the Third Circuit found outright in *Peralta* that *Grove* is no longer "good law," and will not be considered by this Court as a result. *Peralta*, 48 F.4th 178.

sale. *Peralta* clarifies that the equivalent to a foreclosure sale in a land contract situation is a default judgment. *Peralta*, 48 F.4th 178. In *Peralta*, the seller acquired a judgment before the debtor tried to cure, so the *Section 1322(c)* remedy was unavailable. Here, the Plaintiffs did not receive a judgment for possession before the Defendant sought Chapter 13 relief. In Pennsylvania, entry of a judgment for possession closes the window to cure installment contracts under *Section 1322*. *Id.* Because the Plaintiffs did not receive a judgment for possession pre-petition, the window to cure remains open.

As noted, *Peralta* provides the Defendant a right to cure, but only if the Property is her principal residence. What is defined as "principal residence" is somewhat vague, but ultimately is the location where the debtor primarily resides. Courts can look to the state law definition of domicile to clarify principal residence.[8] *See Butner v. United States,* 440 U.S. 48 (1979). What remains unclear is what "timing" applies to the principal residence issue determination. Must the property be the debtor's principal residence at the time of the bankruptcy filing? Or is the date the creditor takes a security interest the critical moment? While it appears there is enough "gray area" to find for the Plaintiffs on the principal residence issue here, the Third Circuit opinion *In re Scarborough*, 461 F.3d 406 (3rd Cir. 2006) makes such a finding under these facts a bit harder.

The *Scarborough* court found that a mortgage on a multi-unit dwelling in which the debtor resides qualifies for the anti-modification protection under *Section 1322(b)(2)*. That provision protects a mortgagee from having its claim in a Chapter 13 proceeding modified if the mortgage is secured only by an interest in real property that is the debtor's principal residence. The

---

[8] In Pennsylvania, Domicile is "the place where one intends to reside either permanently or indefinitely and does in fact reside." *61 Pa. Code §101.3*. Here, the Defendant did not provide any evidence that she intends to remain at the Property or that she currently resides in the Property.

9

*Section 1322(b)(2)* language parallels that of *Section 1322(c)*, which is the relevant *Bankruptcy Code* provision in this case.

In *Scarborough*, the Third Circuit found that the critical moment for determining residency for purposes of *Section 1322(b)(2)* is when the creditor acquires a security interest in the collateral. *See Scarborough*, 461 F.3d 406 (2006). The Third Circuit further found that taking such an approach prevents a debtor from manipulating the character of the property before filing bankruptcy. *Id.* But as noted, *Scarborough* concerns *Section 1322(b)(2)*, not *Section 1322(c)*, as is relevant here. Nevertheless, the "principal residence" language remains the same. If *Scarborough* is applied here, the Court must also determine whether the Property was the Defendant's principal residence when the McDonalds acquired the security interest in the Property.

*In re Kelly*, 486 B.R. 882 (Bankr.E.D.Mich. 2013) developed factors that a court can consider in determining principal residence in a Chapter 13 case, but those only work when applying the anti-modification provisions of the Bankruptcy Code. The *Kelly* factors include:

(1) Where did the debtor reside on the date of filing of bankruptcy?

(2) Did the debtor move out of their principal residence shortly before or after the filing of the bankruptcy?

(3) Did the debtor move into a property debtor had previously used as a rental property?

(4) Where does the debtor intend to reside for the duration of the bankruptcy?

(5) Does the debtor retain title to the property even though debtor is not residing in the property at the time of filing for bankruptcy? And,

(6) Did the debtor start renting his/her principal residence to tenants around the time debtor filed for bankruptcy?

Even if the Court applied the *Kelly* factors here, the outcome would still be such that the Property cannot be considered the Defendant's principal residence. The *Kelly* court noted that, based on Congressional intent in enacting *11 U.S.C. Section 1322(b)(2)*, which language parallels *Section 1322(c)*, the more important temporal consideration is not "where" the debtor resides on the date they file bankruptcy, but where the debtor "intends to reside" during and after their bankruptcy. The *Kelly* court further noted that the analysis for principal residency should be conducted under state law, and considering whether a property is the debtor's domicile. *Kelly*, 486 B.R. at 886.[9]

While *Kelly* is not controlling here, it does offer a useful framework when considering whether the Property has been the Debtor's principal residence at any point in this discussion. An alternative perspective was followed in *In re Crump*, 529 B.R. 106 (Bankr.D.S.C. 2015). The court in *Crump* looked to the petition date to determine whether the principal residence test was met. It references a Chapter 13 treatise and states that the trend in Chapter 13, at the time, was to look at the date of the security agreement to determine whether the claim is secured solely by the principal residence, and that until recently, the majority looked to the petition date. *Keith M. Lundin & William H. Brown,* Chapter 13 Bankruptcy, 4th ed. §121.2, Sec. Rev. Apr. 11, 2011.[10]

---

[9]   It is worth noting that at least three courts disagree with the *Kelly* approach and state that the petition date is the critical date for determining principal residence. *See In re Brinkley*, 505 B.R. 207 (Bkrtcy.E.D.Mich. 2013) (finding that the approach suggested by the *Kelly* court would open the door to even greater debtor manipulation); *In re Lister* 593 B.R. 587 (Bkrtcy.S.D.Ohio 2018) (rejecting *Kelly* and finding that the petition date is the critical moment for establishing principle residence in Section 1322(b)(2)); *In re Collins*, 2015 WL 1650973, at *3 (Bkrtcy.S.C.Tex. April 7, 2015) (applauding the practicality of the *Kelly* balancing test, but finding that *Section 1322(b)* does not allow the discretion to engage in such an approach).

[10]   The *Crump* court opined that the cases are split evenly.

To meet their perceived "timing" factual predicate during trial, the Plaintiffs called Mr. Thomas Geer to testify, without objection, about whether the Defendant lived at the Property at any relevant time. Mr. Geer owns the property adjacent to the subject Property and is a member of the Mount Jewett Borough Council. Mr. Geer testified that, during the summers of 2020 and 2021, he saw no activity at the Property and the Defendant was not caring for the Property or surrounding lawn. Mr. Geer testified he exclusively mowed the lawn during those summers — because no one else was doing so — and reported seeing the Defendant at the Property only once during 2021. The Plaintiffs claimed the Geer testimony supported their contention that the Defendant had abandoned the Property and, by inference, no longer lived there.

When asked whether anyone other than the Defendant had been living in the Property, Mr. Geer testified that the Defendant's daughter and her daughter's boyfriend resided at the Property during 2019. He also testified that he did not recall seeing the Defendant at the Property in 2019. The Court notes that the Geer testimony was credible and compelling as to the matters related. Since the Defendant failed to appear at trial, she did not provide rebuttal testimony about whether she lived at the Property during any relevant time. Based on the testimony given at trial and the evidence submitted to the Court, the Defendant has not lived at the Property for some indeterminate time.

Either way, based on the testimony and the evidence presented by the Plaintiffs, it appears the Defendant was not using the Property as her principal residence on the petition date. If that were the legal standard, this Court would be required to find in the Plaintiffs' favor. In any event, the inquiry does not end there.

Here, once the burden of production shifted, the Defendant failed to provide any evidence that she currently lives at the Property or that it is currently her principal residence. In contrast, the Plaintiffs have provided ample evidence suggesting that the Defendant has not lived at the Property for quite some time. However, the Plaintiffs have not submitted evidence that the Defendant was not using the Property as her primary residence when the McDonalds took a security interest in the Property. Such is the standard established in *Scarborough* and adopted by this Court.[11]

### *The Defendant has an interest in the Property, and can cure her debt through a Chapter 13 Plan*

The Plaintiffs believe that even if the Defendant were to prevail on the residence issue, she would be precluded from curing the Plaintiffs' debt in bankruptcy. In support of their contention, the Plaintiffs rely on *In re Belmonte*, 240 B.R. 843 (E.D.Pa. 1999). The Plaintiffs claim the *Belmonte* court found the debtor's failure to make pre-petition payments under a land contract voided the agreement. *Plaintiffs' Pretrial Statement, p. 4*. The Plaintiffs also argue the *Belmonte* court then held that the time to cure had expired pre-petition due to the decision of a lower state court and, as a result, the debtor had no equitable right to cure via a Chapter 13 plan. The critical

---

[11] The Court has found very little guidance on how to address the principal residence issue in an installment land contract situation under *Section 1322(c)*. A plain reading of the statute indicates that the Defendant only has a right to cure under this *Section 1322(c)* if the Property is her principal residence. The most logical extension of this is that the Property must be her principal residence at the time of the bankruptcy filing. However, *Scarborough* states that the critical moment for determining principal residence is when the security interest was established, not when the bankruptcy was filed. Furthermore, *Scarborough* and the other cases cited here, deal with debtors who have changed the use of their property, unlike the present matter where the usage has remained residential. These cases deal with loan modifications referenced in a different part of the statute and have fact patterns very different from this matter. Additionally, none of these cases deal with installment land contracts.

distinction here however is that, in *Belmonte*, the land contract holder received a pre-petition judgment of possession in her favor — unlike in this dispute where the Plaintiffs have not secured any such judgment in their favor. Therefore, incorporating the reasons stated above, the Defendant retains a right to cure the debt to the Plaintiffs pursuant to *Section 1322(c)*.[12]

This distinction is restated by the Third Circuit's holding in *Peralta*. As previously noted, the creditor in *Peralta* obtained a judgment for possession before Peralta filed his Chapter 13 bankruptcy. The Third Circuit found that the judgment for possession was akin to a foreclosure sale, and that because judgment was entered before the bankruptcy, the property was not part of the bankruptcy estate. The Third Circuit accordingly held that "entry of a judgment for possession shuts the §1322(c)(1) window to cure defaults on installment contracts in Pennsylvania." *Id.* Since the Plaintiffs here did not receive a judgment for possession before the Defendant filed her Chapter 13 bankruptcy, the Defendant's right to cure pursuant to *Section 1322* continues unabated.

In light of the matters considered above, the Court finds the Defendant retained an interest in the Property and can cure her arrearages under *Section 1322(c)* because, although there is a lien on the Property upon which the Defendant defaulted, the Plaintiffs have not received a

---

[12] The Plaintiffs also allege a land contract must be recorded to be treated like a mortgage. The Plaintiffs rely on *Anderson* to claim, because the Land Contract was not recorded, it is not a security document and cannot be considered a mortgage. This is a misstatement of the *Anderson* holding. Instead, applicable Pennsylvania law makes clear that "the lower court's emphasis upon the necessity of the recording of the contract, rather than whether it could have been recorded, was erroneous." *Anderson*, 417 A.2d at 1230. The emphasis should not be on whether the document was recorded, but on whether the document can be recorded. *41 P.S. §§101, 101(f)*. Pennsylvania courts have also made clear that the definition of a residential mortgage in *Act No. 6 of January 30, 1974*, P.L. 13, 41 P.S. s 101 et seq. (Supp.1979) should be broadly construed to include residential installment land contracts. The Pennsylvania Code states that the term "security document" includes "(i) An installment land contract, land contract, or lease purchase agreement." *10 PA. CODE § 7.2*; *see also Anderson*, 417 A.2d at 1230. Accordingly, this Court finds that the Land Contract is an enforceable security document.

14

judgment for possession and have failed to meet their burden in demonstrating that the Property was not the Defendant's primary residence during the relevant time. Accordingly, judgment will be entered in favor of the Defendant as to Count I.

### *The Plaintiffs are entitled to relief from the automatic stay.*

Also at issue in this matter are the related concerns of whether the Defendant can complete a successful Chapter 13 plan and to what extent the Plaintiffs' *Proof of Claim* is valid. As previously noted, this is the Defendant's fifth bankruptcy, and each of her prior bankruptcies were dismissed without a single payment being made to the Chapter 13 Trustee. As of the date of this *Memorandum Opinion*, the Defendant has yet to make her previously due September payment.

As noted above, the Debtor filed her current bankruptcy to cure the outstanding balance under the Land Contract and stay pending state court ejectment action. Following the October 7, 2021, *Show Cause* hearing, the Defendant expressed her good-faith intentions to complete her current bankruptcy. Despite this representation, the Defendant has been inconsistent at best in making plan payments throughout these proceedings. After the Defendant missed several payments in her Chapter 13 case, the Court issued its July 29, 2022 *Order* (Doc. No. 77) directing the Debtor to timely make complete plan payments to the Chapter 13 Trustee. The July 29th *Order* once again made clear that, if the Defendant failed to make any subsequent plan payments for the duration of this case, then the case would be dismissed upon the filing of an Affidavit of Default by any creditor. The *Order* emphasized that time was of the essence. Even so, the Defendant's August payment was several days late. Nevertheless, the Court "looked the other way" and allowed the case to proceed given the pending trial in this Adversary Proceeding.

As previously stated, the Defendant failed to appear at trial — despite having sufficient notice as to the date, time, and location of the trial and despite rescheduling the trial one time at the Defendant's request. The Debtor did not contact the Court to request a new trial date or to otherwise explain her failure to appear. Nor did her Counsel provide an appropriate excuse for her attendance failure.

This case is marked throughout by the Defendant's disregard for important deadlines and Court orders. This trend continues, as the Defendant's September payment was due on September 21, 2022. As of the date of this *Memorandum Opinion*, the Defendant has yet to make that payment.[13] Based on the Defendant's history with this Court and her conduct throughout these matters, obviously she is not committed to completing her current bankruptcy case.

This is just the latest iteration in a long history of the Defendant's failure to make her Chapter 13 payments. As noted, the Defendant's August payment was several days late and, according to the Chapter 13 Trustee's website, the Defendant previously failed to make payments

---

[13] Under *F.R.E. 201(b)(2)* the Court may take judicial notice of facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. In this case the Chapter 13 Trustee is a member of "13 Network," an organization that hosts data for numerous standing Chapter 13 trustees located throughout the country. A review of the organization's website lists Chapter 13 trustees from 33 states who are participants. *See* https://www.13network.com/. Among the data provided on this organization's website are continuously updated plan payment histories for all Chapter 13 debtors in this District. The Court, and the attorneys who practice before it, routinely rely on the information provided in these plan payment histories and the accuracy and reliability of it have never been reasonably questioned. The Court will therefore take judicial notice that the payment history for Debtor reviewed immediately prior to the entry of this Order shows that she has not made any plan payment for September 2022, which was due on September 21st. The Court would further note that it may take judicial notice of the docket entries in the case, which include the confirmation order establishing the timing and amount of plan payments owed by the Defendant. *See, e.g.*, *In re Brownsville Property Corp., Inc.*, 2013 WL 4010308, n.2 (Bankr.W.D.Pa. Aug. 1, 2013) (court may take judicial notice of case docket and contents of documents on it for purpose of ascertaining timing and status of events in the case and facts not reasonably in dispute).

for September 2021, December 2021, January 2022, February 2022, June 2022, and July 2022. This pattern of total disregard for the Court's directives and the bankruptcy process ends here.

The Court has repeatedly admonished the Defendant for her failure to make payments or appear at important hearings. Each time, the Defendant has assured the Court that she will make the next payment, promises to appear at the next hearing, or otherwise represents her desire to remain in bankruptcy — to no avail. Based on the Defendant's failure to adhere to the Court's July 29th *Order* and her failure to appear at the trial on the above matters, it is evident she is not committed to completing her Chapter 13 plan. The Court finds that under the foregoing circumstances, relief from stay is appropriate per *11 U.S.C. Section 362(d)*. *See In re Heine*, 2022 WL 883938, at *2 (3rd Cir. 2022) (finding that the bankruptcy court may grant relief from the automatic stay for cause under *11 U.S.C. Section 362(d)(1)*). *See also In re Myers*, 491 F.3d 120, 128 (3rd Cir. 2007) ("Whether to annul the automatic stay is a decision committed to the bankruptcy court's discretion….").

## CONCLUSION

In summary, the Defendant retains an interest in the Property and has a legal right to cure her arrearages through the Chapter 13 Plan. Additionally, the Land Contract is a security document and is treated like a residential mortgage for purposes of foreclosure under Pennsylvania law. The Plaintiffs claim the Defendant does not have an interest in the Property because of her failure to comply with the Land Contract and because she is no longer living at the Property. However, the Defendant has retained an interest in the Property and her right to cure because the Plaintiffs did not receive a judgment of possession before the Defendant filed her current

bankruptcy. Nor did the Plaintiffs meet their burden of proof in convincing the Court that the Property was not the Defendant's principal residence when the Defendant entered the Land Contract with the McDonalds. Finally, the Land Contract is an enforceable security document under Pennsylvania law. For the above reasons, the Court finds in favor of the Defendant regarding Count I of the *Complaint*.

Still, considering the Defendant's failure to timely make the requisite plan payments in her current bankruptcy, the Court will grant the Plaintiffs' request for relief from stay in Count II of the *Complaint*. Accordingly, the Plaintiffs' request for relief from the automatic stay is granted, and the Plaintiffs may proceed with their state court ejectment action.

An appropriate Order follows.

Dated: October 5, 2022

                                                Thomas P. Agresti, Judge
                                                United States Bankruptcy Court

Case Administrator to serve:
    Plaintiffs
    Defendant
    Christopher J. Antalics, Esq.
    Ronda Winnecour, Esq.